Bernard Alfred AUBUCHON, Appellant,

v.

The STATE of Texas, State.

No. 2–81–283–CR.

Court of Appeals of Texas,
Fort Worth.

Jan. 12, 1983.

Frank M. Sullivan, III, Fort Worth, for appellant.

Tim Curry, Dist. Atty. and Joe C. Lockhart, Asst. Dist. Atty., Fort Worth, for State.

Before SPURLOCK, HUGHES and HOLMAN, JJ.

## OPINION

SPURLOCK, Justice.

Appellant, Bernard Alfred Aubuchon, was convicted by a jury of capital murder. V.T.C.A. Penal Code, sec. 19.03. The trial court sentenced Aubuchon to life imprisonment.

We affirm.

Aubuchon alleges, in four grounds of error, that:

1) the trial court erred in admitting his third confession over objection;

2) the evidence is insufficient to sustain the allegation that the victim was murdered;

3) the trial court erred in refusing to charge the jury on the law of circumstantial evidence; and

4) the trial court erred in refusing to charge the jury that a confession, standing alone, is not sufficient to authorize a conviction for the alleged offense.

Since Aubuchon challenges the sufficiency of the evidence, we shall set forth the facts.

On the evening of May 12, 1980, Steve Smith, a diamond salesman left his home in Arlington, Texas for an out-of-town business trip. When he failed to call his wife on the following Wednesday as he said he would, she began searching for him, but his body was not discovered until almost five months later.

On September 19, 1980, an officer with the Fort Worth Police Department found Steve Smith's Lincoln Continental automobile on the parking lot of an apartment complex in Fort Worth. On the following day another officer found in the car a fragment from a .32 caliber bullet, a white powder determined to be lime, and blood stains on the right front seat.

In the latter part of the summer of 1980, Charles Langston found a briefcase inside his machine shop business in Grand Prairie. Inside the briefcase, Langston found a wallet containing Steve Smith's drivers license. Langston called the Grand Prairie Police Department and reported finding the briefcase, because he thought the name on the drivers license was that of a missing diamond salesman he had read about in the newspaper. Aubuchon was an employee of the company, and one of three persons in possession of a key necessary to gain access to the area where the briefcase was found.

On October 2, 1980, in response to a request from Arlington Police Department detectives, Aubuchon voluntarily went to the Arlington police station for questioning. Upon his arrival, Officer Larry Rowlett read Aubuchon his so-called "*Miranda* rights", and showed him the briefcase found in Langston's machine shop. On the table where the briefcase lay was also a diamond scale and a picture of Steve Smith. Rowlett asked Aubuchon to take Rowlett to where Smith's body was buried. Rowlett "told [Aubuchon] that [Aubuchon] had evidence in the case and that [Aubuchon] had information on it." Aubuchon then agreed to take the officers to the grave where the body was buried.

Aubuchon led police officers to a location near a dirt road off Collard Road in the City of Arlington. Aubuchon "walked to the grave and pointed to a low spot between the two trees with brush on it and told me (Rowlett) that's where Steve Smith was laying with his head facing south." Aubuchon then told Officer Rowlett that he and Roy Benton had shot Steve Smith on I–20 en route to Fort Worth.

Officer Rowlett then took Aubuchon to a police substation, where he again advised him of his rights and where Aubuchon signed the first of three written confessions. In the statement, Aubuchon stated that Roy Benton had approached him with a plan "to kill a diamond dealer and get the money and split it." He further described the digging of the grave, about one week prior to Smith's murder, and its location. The statement described how Benton and Smith drove to Aubuchon's apartment complex in their own separate vehicles, how Aubuchon suggested that all three men go to Fort Worth to meet Aubuchon's sister (a fabrication, as Aubuchon had no such sister), and how all three men drove in Smith's vehicle to Fort Worth, on Route I–20. Smith drove. While en route, Aubuchon put a garbage bag over Smith's head and Benton shot Smith twice in the head. Benton then drove to the grave site.

These events took place late at night. The statement describes the burying of the deceased, including driving back to Benton's house to get two sacks of lime, and then returning to the grave site and covering the body with lime, and the taking of a diamond case and putting it into Benton's car. Aubuchon also included in his statement that he and Benton then went to Fort Worth and washed Smith's car and left it at some apartments; that there was a lot of blood on the passenger side of the car; that they then drove to the Trinity River where Benton threw the gun into the river; that Benton took the diamonds out of the case that belonged to Smith and put them in a case Benton had brought, and told Aubuchon that he would sell the diamonds and that they would split the money; and that Aubuchon then took the case to the machine shop although Benton had told him to burn it. Aubuchon then stated that he had talked with Benton three days prior to the day he gave the statement, and that Benton had said that he still had the diamonds.

On October 4, 1980 at 1:30 a.m., Aubuchon gave a second confession to "clear up" some facts. Among other things, Aubuchon stated that Benton had given him Smith's watch. Aubuchon was wearing Smith's watch at the time of his arrest. This statement also referred to a shovel and small axe used to dig Smith's grave, and to a briefcase into which the diamonds had been put. These items were recovered from Benton's home pursuant to a search warrant. A number of jewels and diamonds were also recovered from Benton's home.

A third written confession was given by Aubuchon at 9:30 a.m. on October 4, 1980. He stated that, contrary to his earlier story to the police, he had shot Smith in the head while Smith drove, that Benton then switched places and took the wheel, never stopping the car, and that Benton then shot Smith several more times in the head while Smith's body was in the front passenger seat, because Benton didn't think Smith was dead.

Curtis Neal testified that he had shared an apartment with Aubuchon and had found Smith's briefcase in his (Neal's) closet. (This event took place on the night prior to Langston's discovery of the briefcase on the roof of his machine shop.) Neal asked about this briefcase and Aubuchon said that it belonged to a diamond dealer "that they had got rid of" and from whom they had stolen diamonds. Neal also testified that he had seen a bag of lime in Aubuchon's pickup around the time of Smith's slaying. In a later conversation, Aubuchon related to Neal a number of the details of the killing and the taking of the diamonds. These details correspond to those which Aubuchon related in his three confessions. Neal testified that he did not go to the police for fear that he might be implicated and because he did not then know the penalty for not going to the police. He also said that he had made no deals with the police or district attorney in return for his testimony.

Dr. Nazam Peerwani, Chief Medical Examiner for Tarrant County, testified that he conducted an autopsy of Steve Smith on October 2, 1980 and that he was present at the grave site in the southwest part of Arlington during the exhumation of Smith's body. He testified concerning five wounds to Smith's head and the recovery of three bullets from the head of the deceased. In his opinion, the cause of death was massive or severe cerebral trauma to the head and the brain due to multiple gunshot wounds. Any one bullet could have caused death, but Peerwani could not say which bullet wound caused the death. Dr. Peerwani ruled the case a homicide. Dr. Peerwani was not asked directly whether the body exhumed from the grave site to which Aubuchon had led the police was the body of Steve Smith. The body was in an advanced state of decomposition when exhumed, due to the lime poured over it, and the passage of time.

Aubuchon's first ground of error contends that the trial court erred in admitting over his objection Aubuchon's third written confession.

Aubuchon's first confession was given on October 2, 1980 at 1:20 p.m. He had twice already been warned of his so-called "*Miranda* rights" at the Arlington Police Department. Defense counsel waived a hearing outside the presence of the jury on the issue of the voluntariness of this first confession; and no complaint as to the voluntariness of this confession is made on appeal.

The second confession was made on October 4, 1980 at 1:30 a.m., after a search warrant (issued on the basis of information provided by Aubuchon) was executed around midnight on October 3, 1980, at Benton's residence. Items used in the alleged crime were found there, as well as most of the diamonds allegedly stolen from Steve Smith.

At trial, Aubuchon waived a *Jackson v. Denno*[1] hearing on these first two statements offered into evidence. However, a third written confession, given at 9:30 a.m. on October 4, 1980, was challenged by de-fense counsel. At the request of defense counsel, the trial court held a *Jackson v. Denno, supra,* hearing on the voluntariness of the third confession. At the hearing, outside the presence of the jury, Aubuchon testified for the limited purpose of disputing the voluntariness of the third written statement. In various respects, his testimony differed from that of the police officer who took the statement. Aubuchon denied signing the statement, and declared that the signature on it was not his.

After the conclusion of this *Denno* hearing, the trial judge entered into the record findings of fact and conclusions of law. He concluded that: the statement was made by Aubuchon; was voluntary; and that no constitutional right accruing to Aubuchon had been violated during the course of the statement or the events leading up to the time the statement had been made. This third written statement was then admitted into evidence.

■ *Jackson v. Denno, supra,* held, inter alia, that State procedures must be fully adequate to insure a reliable and clear cut determination of the voluntariness of an extra judicial statement made by the accused. This determination must be made outside the presence of the jury, in a separate and independent hearing. We have reviewed the record, and find that: there was no evidence of any threats or other coercive actions on the part of the police; ample and repeated warnings were given apprising Aubuchon of his rights before he gave his statements; and there was no evidence that the statement was motivated by anything other than Aubuchon's desire to clear his conscience. We sustain the findings of fact and conclusions of law entered into the record by the trial court pursuant to V.A.C.C.P. art. 38.22, and overrule Aubuchon's first ground of error.

Aubuchon's second ground of error asserts that the evidence is insufficient to sustain the allegation that Steve Smith was murdered.

1. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

■ A search of the record reveals that the Tarrant County Medical Examiner testified, without objection, that he had conducted an autopsy of Steve Smith. Also, a police officer testified, without objection, that he conversed with Aubuchon about the death of Smith and that Aubuchon agreed to lead police to Smith's grave; and that Aubuchon did take them to the grave site. "Mr. Aubuchon walked to the grave and pointed to a low spot between the two trees with brush on it and told me that's where Steve Smith was laying." Aubuchon apparently would have us rule that because there was no question of any witness which directly asked, "Was the body exhumed from the grave site, which Aubuchon led police to and identified as that of the diamond dealer he and Roy Benton had slain, that of Steve Smith?" or words to that effect, the evidence at trial was insufficient to sustain the allegation that Steve Smith was murdered. This contention is without merit. Where a police officer has found a murder victim, and a medical examiner has performed an autopsy on that murder victim, and both testify without objection that the deceased was a specific person, and absent credible evidence to the contrary, we hold that the identity of the deceased as that specific person has been directly established by the evidence. See Lopez v. State, 482 S.W.2d 179, 182 (Tex.Cr.App.1972); and Estrada v. State, 422 S.W.2d 453, 455 (Tex.Cr.App. 1968). We therefore overrule Aubuchon's second ground of error.

■ Aubuchon urges in his third ground of error that the trial court erred in refusing to charge the jury upon the law of circumstantial evidence. Aubuchon's position is that if there was sufficient evidence at trial to establish that the body of the deceased was that of Steve Smith, then the jury must have reached that conclusion on the basis of circumstantial evidence. Both the testimony of the medical examiner, and the statements made to police at the deceased's grave site by Aubuchon, were direct evidence of the identity of the deceased as Steve Smith. We have so ruled, and we therefore also find that the requested charge upon the law of circumstantial evidence was properly denied. We sustain this decision by the trial court, and overrule Aubuchon's third ground of error.

■ In his fourth ground of error, Aubuchon contends that the trial court erred in refusing to charge the jury that a confession, standing alone, is not sufficient to authorize a conviction for the alleged offense of murder.

"When the body of the crime (that is, the corpus delicti) is established by other evidence, as is true in the instant case, an instruction on corroboration is not necessary." Aranda v. State, 506 S.W.2d 221 (Tex.Cr.App.1974).

"Moreover, proof of the corpus delicti need not be made independent of an extra-judicial confession. If there is some evidence corroborating the confession, the confession may be used to help establish the corpus delicti." (cites omitted.)

\* \* \*

"Appellant complains of the trial court's refusal to instruct the jury that appellant's confession had to be corroborated by evidence of the corpus delicti. When the corpus delicti is established by other evidence, no such charge is necessary. Aranda v. State, 506 S.W.2d 221 (Tex.Cr.App.1974); Engledow v. State, 407 S.W.2d 789 (Tex.Cr.App.1966). As previously discussed, the corpus delicti in this case was sufficiently established. No error is shown." Honea v. State, 585 S.W.2d 681, 684, 687 (Tex.Cr.App.1979).

In the instant case, as in Aranda, supra, and Honea, supra, Aubuchon's guilt was not established by his confession standing alone. Perusal of the record reflects that the corpus delicti, i.e.: "the substance or foundation of (the) crime; the substantial fact that a crime has been committed", Black's Law Dictionary, 413 (4th ed. 1968), was established by a substantial quantity of other evidence. Much of this evidence is related above, including the tools used to dig Smith's grave, testimony by Aubuchon's roommate (Neal), the briefcase stolen from Smith during the course of his murder, shown to have been possessed and hidden by Aubuchon after Smith's demise, Smith's

watch, stolen after his murder and worn by Aubuchon at the time of his arrest, and other evidence showing that Smith was killed in the course of robbery of diamonds he carried in the aforementioned briefcase. As in *Aranda, supra,* and *Honea, supra,* no error is shown, and Aubuchon's fourth ground of error is therefore overruled.

We affirm.